(No. 60029

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN O'NEAL, Appellee.

*Opinion filed November 30, 1984.*

400

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Kendall Hill, Assistant Public Defender, of counsel, and Michael Lee Pflaum, law student), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, John O'Neal, was indicted in the circuit court of Cook County for murder (including two counts for felony murder), rape, two counts of aggravated kid-

naping, two counts of armed robbery, and two counts of armed violence. Before the case was submitted to the jury, the trial court dismissed the counts pertaining to armed robbery and felony murder. The trial court also dismissed one aggravated-kidnaping count. Defendant was tried by a jury and convicted of murder, rape, and one count of aggravated kidnaping. He received a sentence of 40 years for murder, 20 years for rape, and 15 years for aggravated kidnaping. The term for aggravated kidnaping was to run concurrently with the term for rape, and those terms were to run consecutively to the murder term. The appellate court, under Supreme Court Rule 23 (87 Ill. 2d R. 23), reversed the murder conviction and remanded the cause for a new trial, on the ground that the trial court had erred in refusing to give jury instructions on voluntary manslaughter which were tendered by defendant. (122 Ill. App. 3d 1158.) We granted leave to appeal. 87 Ill. 2d R. 315.

At issue is whether the trial court erred when it instructed the jury on self-defense but refused to instruct the jury on voluntary manslaughter based on an unreasonable belief that force was justified.

The record discloses that on November 29, 1981, the victim drove her boyfriend home following an evening spent at her mother's house watching television. When the victim was about to drop her boyfriend off at his residence, they were approached by two armed men, the defendant and Robert Hendricks. According to the victim's testimony, the defendant and Hendricks suddenly opened the front doors to the victim's car and forced themselves into the car at gun point. Hendricks ordered the boyfriend to get into the back seat of the car with the defendant and directed the victim to slide over to the passenger side. Hendricks then got behind the steering wheel and proceeded to drive for about one-half hour. Hendricks pulled into an alley and parked the car. Ac-

cording to the victim, the gunmen first ordered the boyfriend out of the car, then herself, and forced her to open the trunk of the car. The defendant locked the victim's companion in the trunk. The victim and the gunmen returned to the car, and Hendricks proceeded to drive around for two to three minutes, eventually stopping in another alley.

The victim testified that, upon reaching the alley, the defendant pulled her into the back seat of the car and raped her. Thereafter, the defendant exchanged places with Hendricks. Hendricks removed his jacket, in which he had placed his gun and wallet, and placed it on the floor of the back seat. While Hendricks was positioned on top of the victim, with his hands behind her back, the defendant shot Hendricks in the head. The defendant then took some money from Hendricks' wallet and ran from the car. He quickly returned to the car, grabbed Hendricks' gun, and again ran away. After the defendant left, the victim released her boyfriend from the trunk. The boyfriend wanted to immediately call the police, but the victim initially refused, stating that she was too upset and frightened to talk to the police. They instead dropped Hendricks' body in an alley and drove to the home of the victim's sister, who then called the police. The victim and her boyfriend gave statements to police, and the victim was transported to a hospital for medical treatment. The defendant was arrested one month later.

The defendant's testimony differed from the victim's on several key points. The defendant testified that he, Hendricks and another man intended to rob the victim and her companion. The third man apparently left the scene before the victim and her boyfriend were approached, and he never returned. According to the defendant, Hendricks ordered the defendant to rape the victim. However, before the defendant could do so, Hendricks changed his mind and decided to be the first to

rape the victim. The defendant testified that as Hendricks was raping the victim, he reached for the gun in Hendricks' jacket pocket. When Hendricks saw him reach, he grabbed the defendant by the arms and attempted to pull the defendant into the back seat. The defendant testified that he then shot Hendricks in self-defense.

The defendant also testified that he was afraid of Hendricks. The defendant had met Hendricks one month prior to the night in question. Defendant stated that in that short time Hendricks forced him to participate in several robberies and to steal a purse. According to the defendant, on two occasions Hendricks forced the defendant at gunpoint to perform deviate sexual acts upon him. Hendricks reportedly threatened the defendant's life and the lives of defendant's family if the defendant told anyone about the incidents. The defendant also testified that he had been warned prior to the night in question that Hendricks had a reputation for violence.

At the close of all the evidence, defense counsel tendered certain Illinois Pattern Jury Instructions (IPI) relating to self-defense and voluntary manslaughter. Defense counsel tendered IPI Criminal 2d No. 24—25.06 on self-defense as well as IPI Criminal 2d Nos. 7.05 and 7.06, the definitional and issues instructions on voluntary manslaughter. Over objection, the trial court allowed the instruction on self-defense to be given, but refused to give the instructions on voluntary manslaughter.

IPI Criminal 2d Nos. 7.05 and 7.06 pertain to the type of voluntary manslaughter predicated on an unreasonable belief by the defendant that the use of deadly force is justified. The instructions are based on section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(b)), which provides that a person commits voluntary manslaughter when he intentionally

or knowingly kills another person under the unreasonable belief that the killing was justified. If the jury concludes that the defendant had such a belief and that the belief was unreasonable, the crime will be reduced from murder to voluntary manslaughter. In contrast, the defense of self-defense requires that the defendant's subjective belief that force is necessary be reasonable. Article 7, section 7—1, of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 7—1) provides that a person is justified in the use of force intended to cause death or great bodily harm if he reasonably believes the force is necessary to prevent imminent death or great bodily harm. (See also IPI Criminal 2d No. 24—25.06.) Thus, both voluntary manslaughter under section 9—2(b) of the Criminal Code and self-defense under section 7—1 of the Criminal Code involve the issue of whether the defendant subjectively believed, at the time of the occurrence in question, that force was justified. They differ only as to the reasonableness of the defendant's belief. If the defendant's belief as to the use of force was unreasonable, the crime should be reduced from murder to manslaughter. If the defendant's belief was reasonable, however, he should be exonerated.

In *People v. Lockett* (1980), 82 Ill. 2d 546, the court discussed at length the issue raised in the present case, and held that where there is evidence in the record to support a self-defense instruction, a voluntary-manslaughter instruction must also be given if tendered by defendant. (See also Committee Note, IPI Criminal 2d No. 7.05.) The court reasoned that a voluntary-manslaughter instruction also should be given because the jury could find that the defendant subjectively believed that force was necessary, yet decide that his belief, under the circumstances, was unreasonable. In such a case, the crime should be reduced from murder to voluntary manslaughter and, without the benefit of a voluntary-

manslaughter instruction, the jury cannot properly make that determination. The court stated:

"It is not the province of the judge to weigh the evidence and decide if defendant's subjective belief was reasonable or unreasonable. The judge's duty is to determine if any evidence is presented that the defendant had a subjective belief. We can conceive of no circumstance when a judge could determine, as a matter of law, that a jury could find the defendant had a reasonable subjective belief the killing was justified, but that the jury could not find the defendant's subjective belief was unreasonable. So long as some evidence is presented from which a jury could conclude that defendant had a subjective belief, the jury should determine if the belief existed and, if so, whether that belief was reasonable or unreasonable." *People v. Lockett* (1980), 82 Ill. 2d 546, 553.

In the present case, the defendant testified that he shot Hendricks in self-defense during a scuffle in which the latter attempted to pull the defendant into the back seat of the car. The trial court concluded that, based on this and other testimony, there was sufficient evidence to submit the self-defense instruction to the jury. After reviewing the record, we agree that an instruction on self-defense was warranted. Consequently, we conclude that the tendered instructions on voluntary manslaughter also should have been given.

The State argues, however, that neither the self-defense instruction nor the instructions on voluntary manslaughter were warranted in this case because the defendant shot Hendricks during the commission of a rape. The State bases its contention on article 7, section 7—4(a), of the Criminal Code of 1961, which provides that self-defense is not available to a person who:

"(a) Is attempting to commit, committing, or escaping after the commission of, a forcible felony ***." (Ill. Rev. Stat. 1981, ch. 38, par. 7—4(a).)

The State contends that since rape is defined as a forc-

ible felony under our Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 2—8), the defendant was not entitled, on the basis of section 7—4(a), to an instruction on self-defense. As such, the State asserts that the voluntary-manslaughter instructions were properly refused by the trial court.

Our review of the record indicates that the State raises this argument here for the first time in its brief. Indeed, the State not only failed to object to the tendered instructions on the basis of section 7—4(a) at trial, it also did not raise the issue in the appellate court or in its petition for leave to appeal. This court has consistently held that issues not raised in the trial court are generally considered waived on appeal. (*People v. Holloway* (1981), 86 Ill. 2d 78, 91; *People v. McCullum* (1977), 66 Ill. 2d 306, 316.) The principle of waiver applies to the State as well as the defendant in a criminal case. *People v. Knight* (1979), 75 Ill. 2d 291, 299-300; *People v. McAdrian* (1972), 52 Ill. 2d 250, 254.

Although the State objected to the self-defense instruction, its objection was based on an entirely different theory than the one now raised. The State also did not tender a jury instruction to the trial court relating to this issue, even though a pattern instruction is available. (See IPI Criminal 2d No. 24—25.10.) Recently, when confronted with a situation similar to the present case, the court noted that "although defense counsel objected to certain aspects of the State's instruction, the ground upon which it is now challenged was not brought to the attention of the trial judge. This court has consistently held that specific objections waive all grounds not specified ***." (*People v. Garcia* (1983), 97 Ill. 2d 58, 86.) The waiver doctrine is based on several important policy considerations. The court in *People v. McAdrian* (1972), 52 Ill. 2d 250, 253-54, explained:

"[T]he [waiver] rule is founded on some rather basic considerations, which include the following: that litigation should not be presented piecemeal; and that all parties are entitled to have matters determined as quickly as possible and at one trial, if possible. The latter consideration is particularly true of a defendant in a criminal action."

Keeping these principles in mind, we conclude that the State, by failing to make a specific objection, as earlier related, regarding section 7—4(a) has waived any right to have this court consider the issue on review.

The State also cites *People v. Moore* (1983), 95 Ill. 2d 404, where the court held that the refusal to give the defendant's requested instructions on voluntary manslaughter was harmless error. The court in *Moore* concluded that the refusal to give an instruction will be held to be harmless error "where it can be said that the result of the trial would not have been different if the instruction had been given." (95 Ill. 2d 404, 410.) The State's reliance on *Moore* is misplaced. In that case, the defendant was charged with murder, felony murder, armed robbery, and armed violence. The court determined that the evidence of the underlying felony—the armed robbery—was so overwhelming that the jury could not have convicted the defendant of anything less than murder because the defendant was charged with felony murder. To be convicted of felony murder, the accused need not have intended to kill (*People v. Trinkle* (1977), 68 Ill. 2d 198, 202), or even know that his acts will cause death or great bodily harm to the victim (*People v. Moore* (1983), 95 Ill. 2d 404, 411). A person commits felony murder if, "in performing the acts which cause the death: *** (3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3).) The instant case differs from *Moore* in several respects. First, the court in

the present case entered a directed verdict dismissing the felony-murder counts. A judgment of acquittal upon a directed verdict is nonappealable. (*People v. Van Cleve* (1982), 89 Ill. 2d 298, 307.) Thus, even if the evidence of the underlying felony in this case—the rape—was overwhelming, the jury did not necessarily have to find the defendant guilty of murder, as the jury did in *Moore*. Indeed, the jury could not have convicted the defendant of murder in the present case solely on the basis of the fact that he caused Hendricks' death while committing a forcible felony, since he was acquitted by the trial judge of felony murder. Therefore, in order to convict defendant of murder, the jury had to determine that the defendant either intentionally or knowingly killed Hendricks, or performed the act in question knowing that such act created a strong probability of death or great bodily harm to the victim. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2).) In sum, unlike *Moore*, the fact that the defendant committed a forcible felony is irrelevant to the murder charge here because felony murder cannot be the basis on which the defendant is convicted. Secondly, the evidence of murder in this case was not overwhelming. As we have noted, there was sufficient evidence of defendant's subjective belief regarding the necessity of force to warrant a self-defense instruction. This finding by the trial court, with which we agree, forecloses any finding that the evidence of murder was overwhelming. Consequently, the refusal to give the voluntary-manslaughter instructions in this case was not harmless error.

For the reasons stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*