THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN HENRY ROBINSON, Defendant-Appellant.

First District (4th Division)   No. 83—1156

Opinion filed February 28, 1985.

Steven Clark and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank G. Zelezinski, and Thomas D. Bilyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, John Henry Robinson, appeals his conviction, in a jury trial, for murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)). He was sentenced to a term of 20 years in the Department of Corrections. The sole issue presented for review is whether the trial court erred in refusing to instruct the jury on voluntary manslaughter where it had determined that the evidence supported an instruction on self-defense.

We reverse and remand.

On the evening of July 18, 1976, Clarence Smith was shot near his residence at 5323 South Federal Street, in Chicago, Illinois. He died from a bullet wound of the head, complicated by pneumonia, on July 25, 1976. A bullet removed from his body may or may not have been fired from the gun identified at trial as the murder weapon. Following the shooting, defendant fled to Los Angeles, California. He remained there until he was arrested and brought back to Chicago in December 1981 on a charge of murdering Smith.

Prosecution witnesses who saw or heard the shooting were Anthony Washington, Timothy Wilson, LeBaron Martin, and Dwayne Hodges.

Anthony Washington, 26 years old, testified that in July 1976 he knew Smith and defendant as neighbors. Washington and defendant bought and sold marijuana. Smith sold marijuana for Washington. Smith owed Washington $15. On the evening of July 18, 1976, Washington hit Smith in the jaw and Smith paid Washington the $15. Later, Washington saw Smith with defendant and several other people. Washington was standing about six feet away from the group. Defendant was in front of Smith, who had his back to a wall. His hands were at his side and nothing was in his hands. Defendant asked Washington whether he got his money from Smith and Washington said yes. Defendant said, "I am going to go and blow his brains out." Defendant lifted a .22-caliber revolver from his side, pointed the weapon at Smith's forehead and fired. Smith fell to the ground.

Defendant walked, then ran, away.

Eventually, Washington returned to his residence, where his mother asked him why he allowed defendant to leave a gun in their home. Washington found a loaded revolver under the covers of his bed. Washington did not put it there. Washington gave the gun to William Lumpkins. On December 5, 1981, Washington identified defendant in a lineup.

Timothy Wilson, 19 years old, testified that he knew both Smith and defendant in July 1976. On the evening of July 18, 1976, he was participating in a dice game with Smith, LeBaron Martin, and several other persons. Defendant approached the group and asked Smith for money. When Smith said he had no money, defendant hit him in the jaw. Later, Wilson saw defendant standing a foot away from Smith. Defendant asked Smith for money; Smith said he had none. Smith's hands were at his side; nothing was in his hands, and he made no threatening gestures toward defendant. Defendant drew a gun, pointed it at Smith's forehead, and fired.

LeBaron Martin, 23 years old, testified that he knew Smith and defendant. On the evening of July 18, 1976, he had been shooting dice with Smith, Wilson, and several others when defendant approached Smith and conversed with him. Twenty minutes later, after he heard a gunshot, defendant ran past Martin with a revolver in his hand.

Dwayne Hodges, 22 years old, testified that Smith was his best friend. On July 18, 1976, he and Smith were observing a dice game when defendant approached Smith and asked for the money Smith owed him. Smith said he had no money. Defendant then hit Smith in the jaw and told Smith that the next time he saw him he had better have the money. Later, defendant approached Smith a second time and asked for money. Again, Smith said he had none. With a gun he had been holding at his side, defendant shot Smith. Smith did not grab the gun or try to hit defendant or struggle with him. Smith's hands were at his side.

Timothy Tidmarsh, a Chicago police officer, responded to the report of a shooting at 5323 South Federal at 7:10 p.m. on July 18, 1976. He visited the apartment where defendant's mother lived, but defendant was not there. He received from William Lumpkins a .22-caliber revolver which was identified as the murder weapon. No fingerprints were lifted from the gun.

John Roberts, a Chicago police officer, brought defendant to Chicago from Los Angeles, California, in December 1981. Defendant was identified in a lineup by Washington and Hodges.

John Henry Robinson, 26 years old, testified in his own defense.

In July 1976, he lived in an apartment building at 5323 South Federal, the same building in which Smith lived. On July 17, 1976, defendant found two bags of marijuana on the street. He asked Smith to sell some of the marijuana. On the afternoon of July 18, 1976, defendant saw Smith and asked whether he had sold the marijuana. No one else was present during this conversation. Smith said he was not going to give anything to defendant and suggested that William Lumpkins—characterized by defendant as a thug—would protect him. While the two were arguing, defendant saw a gun near Smith's chest. Smith's arms had been at his side, but his hands had been behind him. Smith raised the gun in his right hand; defendant grabbed the gun and Smith's hand. The gun discharged and defendant ran. Eventually, defendant arrived at the airport. He did not know how he got there. He traveled by plane to Los Angeles. Defendant denied that he shot Smith and that he had a gun in his possession prior to the shooting. He did not take the gun with him after the shooting and he did not give it to anyone. Defendant was just defending himself when the shooting occurred.

At the close of testimony, the trial court refused defendant's request for a voluntary manslaughter instruction. The jury found defendant guilty of murder, and the trial court sentenced him to a term of 20 years. Defendant appeals.

Defendant argues that the trial court should have instructed the jury on voluntary manslaughter where it instructed the jury on self-defense. We agree.

■ Under section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1), a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm. A person commits voluntary manslaughter when he intentionally or knowingly kills an individual under the unreasonable belief that deadly force is justified. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).) Thus, self-defense and voluntary manslaughter both involve the issue of whether defendant subjectively believed, at the time of the occurrence in question, that force was justified. They differ only as to the reasonableness of defendant's belief. If his belief was unreasonable, the crime should be reduced from murder to manslaughter; if his belief was reasonable, he should be exonerated. (*People v. O'Neal* (1984), 104 Ill. 2d 399, 405.) In *O'Neal*, our supreme court held that where there is evidence in the record to support a self-defense instruction, a voluntary manslaughter instruction must be given also, if tendered by defendant. 104 Ill. 2d 399, 405.

■ In the instant case, defendant testified that he saw a gun near the victim's chest and that the gun discharged as he struggled with the victim. In closing arguments, counsel for both sides addressed the issue of self-defense. The jury was instructed on self-defense, but the trial court refused defendant's request for a voluntary manslaughter instruction. In accordance with *O'Neal*, we hold that the trial court committed reversible error when it instructed the jury on self-defense but refused to instruct it on voluntary manslaughter.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.