THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SARKIS H. ESHAYA, Defendant-Appellant.

First District (4th Division)   No. 85—513

Opinion filed June 5, 1986.

758

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Paula M. Carstensen, and Jeffrey S. Ryan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Defendant, Sarkis H. Eshaya, was charged by indictment with the April 29, 1983, street-gang–related murder of Marcos Ocampo and the attempted murder and aggravated battery of Martin Salgado. Following a jury trial, defendant was found guilty of murder as to victim Ocampo and guilty of aggravated battery as to victim Salgado. On October 24, 1984, defendant was sentenced to the Department of Corrections by the trial court for concurrent terms of 30 years for murder and three years for aggravated battery.

On appeal, defendant contends that the trial court committed reversible error in that: (1) the State failed to prove him guilty beyond a reasonable doubt of murder and aggravated battery; (2) certain evidentiary rulings by the trial court and remarks by the prosecutor prejudiced his case; and (3) in sentencing defendant, the trial court improperly considered in aggravation evidence of defendant's prior misconduct.

We affirm.

BACKGROUND

On the evening of April 29, 1983, the murder victim, Marcos Ocampo, drove himself and Martin Salgado, Mario Gallardo, Romell Nava and John Ortega to a bar called the Rainbow Lounge. The Rainbow Lounge (the bar), is located at the northwest corner of the intersection of Clark Street and Lawrence Avenue on Chicago's north side. This corner is regarded as the "turf" of a Chicago street gang known as the "Brazers." Three of Ocampo's passengers, Salgado, Gallardo, and Nava, were members of the Brazers. The fourth passenger, Ortega, like Ocampo, was not a member of the Brazers or any other street gang.

As the five young men exited Ocampo's automobile, they noticed Javier Torres, another Brazer, standing in front of Tina's hot dog stand, located just north of the bar on the same side of Clark Street. At that time, Nava walked over to Torres and Ortega went into the bar as the others waited outside.

Defendant Eshaya, known on the street as "Ace," and two other men then emerged from Tina's. All three were members of a street gang called the "Latin Kings," a rival gang of the Brazers. Although the prosecution and the defense present different versions of what happened next, they do agree that Nava became involved in a fistfight with Humphrey Jenzeh, one of the Latin Kings with Eshaya.

At trial, Salgado, Nava, and Gallardo testified that the fight broke out when Jenzeh began to accuse Nava of being affiliated with the "Disciples," another street gang allegedly allied with the Brazers and opposed to the Latin Kings. Eshaya and Jenzeh, on the other hand, testified that Torres approached them in front of Tina's and began shouting gang slogans at them. They stated that when they emerged from Tina's they were confronted by 15 to 20 Brazers who Torres had rounded up in the bar next door. According to the Latin Kings, the Brazers were armed with baseball bats, pool cues, sticks and knives.

Salgado, Nava and Gallardo denied that they were armed, but stated that there was a baseball bat in the trunk of Ocampo's automobile. They also stated that they were soon surrounded by a large number of Latin Kings who had been summoned from the neighboring roller rink. When the other Latin Kings arrived, the Brazers began to back away. As they did, Ocampo held out his arms, palms up, and told Eshaya and the Latin Kings that they did not want any trouble. At that point, Eshaya asked for and was handed a gun from someone in the crowd of Latin Kings. Holding the gun in two hands, Eshaya then turned towards Ocampo, who was standing 20 to 30 feet away, and shot him. Ocampo struggled to reach the doorway of the bar where the other Brazers had run for cover. Nava and Gallardo pulled him inside the doorway and Nava called an ambulance. When Salgado stepped forward to see who had shot Ocampo, Eshaya turned around and shot twice at him. One of the rounds hit Salgado in his left lower leg.

Ocampo was taken by ambulance to Weiss Memorial Hospital where he later died from the bullet wound. At the hospital, Nava and Gallardo told police that they knew who shot Ocampo. Eshaya and some companions were arrested later that night, and on May 20, 1983, Gallardo and Nava identified Eshaya in a lineup as Ocampo's killer.

Although Eshaya first denied being at the scene of the shootings, at trial he testified that he shot Ocampo and Salgado in self-defense. According to Eshaya, he was afraid that the Brazers might have guns. At one point in the trial, Eshaya said that Ocampo had his hand behind his back and so Eshaya shot him. Later in the trial, Eshaya stated that Ocampo was trying to hit him with a baseball bat when he shot him.

Chicago police officer Alfred Adreani testified that he and his partner were the first police officers to arrive at the scene. He stated that a search of the area did not reveal any guns, knives, pool cues, baseball bats or other weapons.

On September 11, 1984, the jury returned a verdict of guilty of murder and aggravated battery against Eshaya. At the sentencing hearing on October 3, 1984, in aggravation, and over the objection of defense counsel, the State introduced evidence that defendant had previously admitted to carrying a handgun. This admission was made in a case in which he was acquitted. On October 24, 1984, Eshaya was sentenced to the Department of Corrections for concurrent terms of 30 years for murder and 3 years for aggravated battery. This appeal followed.

OPINION

I

■ Defendant Eshaya first contends that the jury improperly found him guilty beyond a reasonable doubt of murder. He contends he was acting in self-defense or, alternatively, that he was at best guilty of voluntary manslaughter. We, however, agree with the State's position that, based on the facts and circumstances of this case, the jury correctly determined that Eshaya was guilty beyond a reasonable doubt of murder.

A

Self-defense is an affirmative defense (Ill. Rev. Stat. 1983, ch. 38, par. 7—14), the elements of which are as follows:

"(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There

is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." *People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752.

"When the trier of fact determines that any of the evidence at trial negates, beyond a reasonable doubt, the existence of one of these elements, the State has carried its burden so that the defense of self-defense must be rejected. Whether the negation has been established is a factual question to be resolved by the trier of fact and this court will not upset that finding unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. [Citation.]" *People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012, 1017.

In the case before us, the jury heard the State's witnesses testify that they were confronted by a number of Latin Kings in front of Tina's hot dog stand. They testified that they themselves were unarmed, and that Ocampo was attempting to make peace with the Latin Kings with outstretched arms when he was shot by Eshaya. According to them, Eshaya and Ocampo were a distance of some 20 feet from each other at the time of the shooting.

Eshaya and the Latin Kings, on the other hand, espoused a dissonant story. They testified that they were confronted by the Brazers who were armed with baseball bats, sticks, knives, and pool cues. However, the first police officer to arrive on the scene testified that no weapons were found on Ocampo or in the vicinity of the incident.

The record also indicates that Eshaya and his Latin King comrades fled the scene of the crime and that Eshaya initially lied to police as to his whereabouts at the time of the shootings. Then, at trial, Eshaya first stated that he shot Ocampo because Ocampo was only a few feet away from him and because Ocampo had one of his hands behind his back as he approached Eshaya. Later, Eshaya proffered a conflicting account testifying that he shot Ocampo because Ocampo was attempting to strike him with a baseball bat. Finally, Eshaya's statement that the Brazers were only five feet away from him when he shot Ocampo was also contradicted by his fellow Latin Kings who, like the State's witnesses, said that Ocampo was 18-20 feet away from Eshaya when Eshaya shot him.

In a case such as this where the testimony adduced at trial is conflicting, it is a function of the trier of fact to determine the credibility

of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136.) Indeed, the trier of fact is not compelled to accept Eshaya's testimony concerning his claim of self-defense as true, but in weighing such testimony it must consider its probability or improbability, the testimony of the other witnesses, and the circumstances surrounding the killing. (See *People v. Warren* (1965), 33 Ill. 2d 168, 174, 210 N.E.2d 507, 510, and its progeny.) It is clear that the jury, after hearing all of the evidence in this case, chose to believe the testimony delineated by the State's witnesses. Based on the record before us, we are persuaded that this evidence was sufficient for a reasonable trier of fact to determine that the State proved beyond a reasonable doubt that Eshaya was not acting in self-defense when he shot Ocampo because the evidence shows that Eshaya was not justified in using deadly force against Ocampo and Salgado at the time of the shootings. Consequently, we do not find the jury's determination that Eshaya was guilty of murder to be so improbable, unsatisfactory or inconclusive as to raise a reasonable doubt of guilt.

### B

■ Eshaya alternatively argues that his conviction should be lowered from murder to voluntary manslaughter because he was acting under the belief, albeit unreasonable, that his use of deadly force against Ocampo was justified. We do not agree.

A person commits voluntary manslaughter when he intentionally or knowingly kills another under the unreasonable belief that deadly force is justified. (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b).) If the jury finds that defendant had such a belief and that the belief was unreasonable, the crime will be reduced from murder to voluntary manslaughter. (See *People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441; *People v. Robinson* (1985), 131 Ill. App. 3d 334, 475 N.E.2d 979.) Thus, voluntary manslaughter is similar to the defense of self-defense in that both involve the issue of whether defendant subjectively believed, at the time of the occurrence in question, that the force was justified. They differ only as to the reasonableness of the defendant's belief that the force was necessary to protect his own life. (Compare Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b) (voluntary manslaughter) with Ill. Rev. Stat. 1983, ch. 38, par. 7—1 (defense of self-defense).) This court will not reduce a conviction from murder to voluntary manslaughter where the jury has reasonably concluded that defendant had no basis for his belief that deadly force was necessary to protect his own life, regardless if the belief was reasonable or unreasonable.

As we discussed above, the facts in this case are such that the jury could have reasonably concluded beyond a reasonable doubt that Eshaya was not justified in his use of deadly force under the circumstances of this case. Consequently, we find no basis in the record for reducing Eshaya's conviction from murder to voluntary manslaughter.

## II

Defendant next contends that several rulings by the trial court and certain remarks by the prosecutor in the presence of the jury prejudiced his case.

## A

■ First, Eshaya contends that the trial court erred in barring proof that Salgado, the victim of the aggravated battery, had a prior misdemeanor conviction for unlawful use of weapons. He states that this conviction was admissible because it tends to show Salgado's violent nature, presumably justifying Eshaya's actions. We believe that this evidence was properly excluded since: (1) defense counsel made no showing that Salgado's offense was violent in nature (see *People v. Trimble* (1985), 131 Ill. App. 3d 474, 477, 475 N.E.2d 971, 974 (where this court noted that the offense of unlawful use of weapons prohibits a number of acts, most of which are nonviolent (Ill. Rev. Stat. 1983, ch. 38, par. 24—1)); but compare *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018); and (2) as a misdemeanor it could not properly be admitted for purposes of impeachment (see *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695).

■ In addition, even if we were to find that the trial court erred in excluding this evidence, we would find such exclusion to be harmless as the record evinces an abundance of evidence from which the jury could have concluded that Salgado's street-gang–related conduct was violent in nature. Accord *People v. Trimble* (1985), 131 Ill. App. 3d 474, 477, 475 N.E.2d 971, 974.

## B

■ Eshaya's next assignment of error is that his defense of self-defense was prejudiced when the trial court sustained the State's objection to a question the prosecutor posed to a defense witness on cross-examination. Without even addressing whether it was proper for the prosecutor to object to an answer given to his own question, we can clearly state that Eshaya was not prejudiced by the trial court's ruling. Although Eshaya argues that the trial court's ruling precluded him from showing that the Brazers carried guns and shot

Latin Kings, the record discloses that the trial court did not strike the answer at issue and that defense counsel drew on the response during closing argument. In addition, the witness had already testified on direct examination that he had been shot by Brazers in the past, and even showed the jury his scar. The witness also related other confrontations between the Latin Kings and Brazers involving weapons. Thus, defense counsel was able to fully develop the proffered testimony at other stages of the trial and therefore suffered no prejudice. See *People v. Gardner* (1977), 47 Ill. App. 3d 529, 536, 362 N.E.2d 14, 20.

## C

Thirdly, Eshaya contends that the trial court should have allowed a defense witness, who was not defendant, to testify as to his own state of mind at the time of the shootings. We agree with the position held by the State and the trial court that this testimony was properly excluded as irrelevant.

■ It is well settled that a defendant's state of mind immediately prior to the time of killing is material in a homicide case when defendant raises the affirmative defense of self-defense. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 934, 450 N.E.2d 913, 920.) This is obvious when we consider, as we did above, the fact that self-defense necessarily involves the question of whether defendant *subjectively* believed, at the time of the incident, that the force exercised against the victim was necessary. See *People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441; *People v. Robinson* (1985), 131 Ill. App. 3d 334, 475 N.E.2d 979.

■ Despite defense counsel's argument in his brief and in oral argument that it would be "good policy" to allow the jury to consider an occurrence witness' state of mind, it was Eshaya who committed the shootings in this case. Accordingly, under the established rule, Eshaya must show that *he* was justified in shooting the victims, and to that end *his* state of mind is material and relevant to disposition of this case. The occurrence witness' state of mind, by contrast, is not in question, and neither is it telling of what Eshaya's subjective feelings were at the time of the shootings. The only logical conclusion is that the witness' state of mind was properly excluded as irrelevant to proving Eshaya's defense of self-defense.

## D

■ Eshaya also contends that he was prejudiced by certain prosecutorial comments made in the presence of the jury. Our review of the

record indicates that this issue is raised for the first time on appeal. We note that our supreme court has consistently held that issues not raised in the trial court are generally considered waived on appeal. (See *People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871, 877.) With this principle in mind, and having found the evidence in this case sufficient to find defendant guilty beyond a reasonable doubt of murder and aggravated battery, we hold that Eshaya has waived his right to have this court consider this issue on review.

## III

Eshaya finally contends that the trial court erred at sentencing by considering in aggravation his prior admission of carrying a gun in a case in which he was acquitted. We find this to be a nonissue in the case before us.

■■ ■ First, it is a well-settled principle of law in this State that at a sentencing hearing, the court is not bound by the usual rules of evidence; rather, the sentencing court may exercise a wide discretion in the sources and types of evidence it uses to determine the kind and extent of punishment to be imposed within the limits fixed by law. (*People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258.) Second, the primary consideration of the sentencing judge must be to determine whether evidence he believes tends to aggravate or mitigate the offense is accurate. (*People v. Crews* (1967), 38 Ill. 2d 331, 321 N.E.2d 451.) This is also true in a case where, like here, the admissibility of a defendant's "prior misconduct" is in issue, since the admissibility of this "other misconduct" is not controlled by whether defendant has been prosecuted and convicted. *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402; *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

■■ In the instant case, the sentencing court heard testimony from a police detective that he had previously arrested Eshaya on an unrelated charge, and that Eshaya admitted to carrying a handgun at the time. The detective also testified that he had recovered the handgun when he arrested Eshaya. The detective gave this testimony under oath in the presence of the sentencing judge and the defense attorney who had the opportunity to question him with regard to the "failed" charge. Under these circumstances, we believe that the sentencing judge did not abuse his discretion in allowing this testimony. (See *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402; *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) We emphasize that the sentencing judge was well aware that defendant was acquitted of the charge in question, and nothing in the record suggests that

the judge failed to consider this as a factor in sentencing Eshaya to the Department of Corrections for 30 years for the street-gang–related murder of Ocampo and three years for the street-gang–related aggravated battery of Salgado.

Furthermore, we find Eshaya's prior misconduct of carrying a handgun to be relevant in aggravation to this case where Eshaya stands convicted of using a handgun to murder one victim and seriously injure another in a street-gang–related confrontation.

Based on the accuracy and relevancy of the testimony discussed above, and since sentencing is a post-conviction stage of the criminal process, we dismiss as meritless defense counsel's additional contentions based on *res judicata* and collateral estoppel grounds.

In sum, it is our opinion that Eshaya was proved guilty beyond a reasonable doubt of murder and aggravated battery; that his defense of self-defense was not prejudiced by the trial court; that he waived the issue of prosecutorial misconduct by failing to include it in his motion for new trial; and that the sentencing judge did not err in considering in aggravation Eshaya's previous admission of carrying a handgun in an unrelated case in which he was acquitted.

Affirmed.

JIGANTI and McMORROW, JJ., concur.