Docket No. 99935.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
BOBBY
WHITE, Appellant.

*Opinion filed April 20, 2006.*

JUSTICE GARMAN delivered the judgment of the court,
with opinion.
Chief Justice Thomas and Justices Freeman, McMorrow
and Karmeier concurred in the judgment and opinion.
Justice Fitzgerald dissented, with opinion, joined by Justice
Kilbride.

**OPINION**

Following a jury trial in the circuit court of Champaign County, defendant Bobby White was convicted of unlawful possession with intent to deliver one gram or more, but less than 15 grams, of a substance containing cocaine, while on real property owned and operated by the Champaign County Housing Authority (Housing Authority) (720 ILCS 570/407(b)(1) (West 2002)). He was sentenced to 15 years' imprisonment. The appellate court affirmed (No. 4–03–0369 (unpublished order under Supreme Court Rule 23)) and defendant filed a petition for leave to appeal (177 Ill. 2d R. 315).

## BACKGROUND

Defendant was initially charged by information in October 2002, with one count of unlawful possession with intent to deliver one gram or more, but less than 15 grams, of a substance containing cocaine (720 ILCS 570/401(c)(2) (West 2000)). Shortly thereafter, an indictment issued, charging defendant with the same offense. At defendant's arraignment, he waived a preliminary hearing, entered a plea of not guilty, and requested a jury trial. Several months later, on the day trial was to begin and after plea negotiations failed, the prosecutor filed an information containing a "count two." That count alleged the same offense as the indictment, with the addition of the allegation that defendant committed the offense while on property owned and operated by the Housing Authority. While the offense charged in the indictment was a Class 1 felony (720 ILCS 570/401(c) (West 2000)), the offense charged in the new information was a Class X felony (720 ILCS 570/407(b)(1) (West 2000)). Defense counsel objected to proceeding to trial on the information because the new count included an additional element. The prosecutor argued that the filing of the information should not be a surprise to defense counsel because the prosecutor had told counsel that he would be filing the information if plea negotiations failed. After counsel declined an opportunity to present argument regarding any prejudice defendant might suffer from the timing of the filing of the new information, the trial proceeded.

Two Urbana police officers, Duane Smith and David Smysor, testified for the State. On the evening of October 1,

2002, the officers were on foot patrol at Lakeside Terrace, a housing complex owned and operated by the Housing Authority. The officers saw a man later identified as defendant walking near a playground on the complex. He was walking in the officers' general direction, juggling an object from one hand to the other. When defendant saw the officers, he turned his back, placed the item in his left front pants pocket, hesitated, and continued walking in the direction of the officers. Defendant appeared to be walking toward an apartment and the officers decided to meet him there to talk to him. The conversation took place a few feet from the front door of apartment No. 32. The officers introduced themselves and "expressed concern" about the object defendant had placed in his pocket. Defendant placed his hands in his pockets and pulled out some United States currency and a cigarette lighter. Defendant's pants fit him very loosely and the front pockets were deep. The officers did not believe that the lighter was the item defendant had been juggling. They asked for permission to search defendant's left front pocket and defendant refused. Defendant appeared to be nervous and he kept placing his hands in his pockets. The officers asked him to keep his hands out of his pockets. After the third time, the officers became concerned because the pockets were large enough to conceal a handgun. Defendant became "fidgety" and continued to put his hand in his left pocket. The officers asked for identification and defendant produced a pay stub. After defendant placed his hand in his pocket for about the sixth time, the officers decided to pat him down for weapons. When Smith reached for defendant, he pulled away and began to run. Smysor gave chase and tackled defendant. As he did so, defendant appeared to toss a white object onto the ground, which turned out to be a plastic bag containing 12 individual packages of a chunky white substance that appeared to be crack cocaine. None of the paraphernalia commonly used in the consumption of crack cocaine were found on defendant's person. Smith testified that, based on that fact, as well as the quantity of cocaine, the manner of packaging, and the $75 in currency found on defendant, he concluded that the cocaine was not possessed for the purpose of personal consumption.

The parties stipulated to the findings of a forensic scientist who weighed six of the bags and concluded that they contained 1.1 grams of a substance containing cocaine base. The other six bags were not weighed. The total weight of all the bags was 1.8 grams. The defense presented no evidence. The jury convicted defendant as stated. Defendant filed a posttrial motion that did not assert any error regarding the alleged faulty information filed by the prosecutor. On appeal to the appellate court, defendant argued that (1) his conviction must be reversed because he did not receive a preliminary hearing on the newly filed information, (2) the evidence was insufficient to convict him of possession of cocaine with the intent to deliver, (3) defense counsel was ineffective for failing to file a motion to suppress evidence, and (4) he was entitled to one day's additional credit against his sentence and an additional $5 against his fines. The appellate court affirmed the trial court on the first three issues, but agreed with defendant on the last issue. The court remanded the cause to the trial court to grant the additional credit. We granted defendant leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS
### I. Standards of Review

Defendant raises three issues for this court's consideration. He first argues that his conviction must be reversed because he was tried and convicted on the basis of an information that improperly attempted to amend the indictment and on which he was not afforded a preliminary hearing. The appellate court reviewed defendant's argument for plain error. However, as we note in our discussion of the issue, the appropriate standard of review that we must apply is the standard set forth in this court's decision in *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976): "When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct."

Secondly, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he intended to deliver the cocaine. When a court reviews the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

Finally, defendant argues that his trial counsel was ineffective for failing to file a motion to suppress evidence. Claims of ineffective assistance of counsel are judged under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on such a claim, the defendant must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The facts are not in dispute in this case. Accordingly, we conduct *de novo* review of the appellate court's rulings. See *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).

## II. Failure to Hold Preliminary Hearing

Defendant first argues that because he did not receive a preliminary hearing on the information filed on the day of trial, his conviction and sentence must be reversed. The appellate court concluded that error was committed in the filing of the information, but that defendant forfeited his argument because defense counsel did not object at trial and include the error in defendant's posttrial motion. The court found the evidence was not closely balanced nor was the error of such magnitude that defendant was denied a fair trial. Accordingly, plain error did not apply.

All prosecutions of felonies must be by indictment or information. If a prosecution is commenced by information, the accused is entitled to a preliminary hearing to determine whether probable cause exists to believe that the accused

committed an offense. 725 ILCS 5/111–2(a) (West 2000). If a prosecution is brought by information or complaint and a preliminary hearing has been held or waived, the accused may be prosecuted for all offenses arising from the same transaction or conduct, even though not all such offenses were charged in the information. 725 ILCS 5/111–2(f) (West 2000). The State may amend the information to charge those additional offenses. *People v. Kelly*, 299 Ill. App. 3d 222, 227 (1998).

Where a prosecution is brought by indictment, the grand jury has thereby found the existence of probable cause and no preliminary hearing is held. Once an indictment has been issued, it may not be broadened through amendment except by the grand jury itself. *People v. Kincaid*, 87 Ill. 2d 107, 124 (1981). An exception to this rule provides that an indictment may be amended on motion of the prosecutor or defendant for the purpose of correcting formal defects (725 ILCS 5/111–5 (West 2000)) if no surprise or prejudice to the defendant results (*People v. Jones*, 53 Ill. 2d 460, 465 (1973)). "However, there is no similar statutory provision permitting the State to alter the substance of an indictment by filing an information without affording the accused a right to a preliminary hearing." *Kelly*, 299 Ill. App. 3d at 227.

There is no dispute that the addition of "count two" in the new information was substantive. The offense thereby charged contained an additional element and carried a more severe penalty. It is also undisputed that defendant was not afforded a preliminary hearing on the new offense nor did he waive his right to a preliminary hearing.

It is important to be clear about the procedural history of this case. The original information was filed on October 2, 2002. It contained one count charging defendant with unlawful possession with intent to deliver a controlled substance, a Class 1 felony. Defendant was arraigned on the charge on October 2, 2002. The preliminary hearing was set for October 22, 2002. On October 17, 2002, the grand jury issued a one-count indictment charging defendant with the same offense. On October 22, 2002, defendant appeared before the trial court with counsel, waived formal reading of the indictment, entered

a plea of not guilty, and requested a jury trial. Since the original information was superceded by the indictment, the information filed on the first day of trial was not an amendment to the original information. Rather, it appears to have been an attempt by the prosecutor to amend the indictment by adding a count II. As stated, the prosecutor lacked authority to do so.

While the appellate court agreed with defendant that the attempted amendment of the indictment was improper, the court found that defendant had waived his challenge to the trial court's failure to hold a preliminary hearing on the new information. The court noted that defendant had not objected "at trial" and failed to raise the issue in his posttrial motion. Reviewing the matter for plain error, the court found the evidence was not closely balanced and that the error did not affect the fundamental fairness of the proceeding.

Defendant argues that the appellate court's decision in *Kelly* is similar to this case and it provides guidance as to the proper analysis. In *Kelly*, the defendant was charged by indictment with two counts alleging hate crimes. On the day of trial, the prosecutor asked leave of court to dismiss the indictment and file a seven-count information. The defendant objected on the ground that the information charged different offenses, entitling him to a preliminary hearing. The trial court rejected the defendant's argument and allowed the filing of the information because the new charges arose out of the same transaction or conduct upon which the indictment was based. The trial court dismissed three of the counts and the defendant was convicted on the other four counts. At the close of trial, the defendant filed a motion in arrest of judgment on the grounds that he was not afforded a preliminary hearing on the charges. The trial court denied the motion. The appellate court reversed and remanded. The State argued that the defendant suffered no prejudice as a result of the denial of a preliminary hearing. The appellate court rejected this argument, finding that even assuming that the defendant did not suffer any prejudice, his conviction would still have to be reversed. The defendant filed a timely pretrial objection, demanded a preliminary hearing, and filed a timely motion in arrest of judgment. Accordingly, he

was not required to show prejudice. *Kelly*, 299 Ill. App. 3d at 228.

There are important distinctions between *Kelly* and the instant case. While defense counsel did object to the prosecutor's filing of the information, he objected only on the ground that the new information charged a different offense with a more severe penalty. In contrast to *Kelly*, counsel did not raise the objection that defendant had not been afforded a preliminary hearing. Further, again in contrast to *Kelly*, defense counsel did not raise the issue in his posttrial motion. Both an objection at trial and inclusion of the alleged error in a written posttrial motion are necessary to preserve the error for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Defense counsel's objection did not inform the trial court of the need for a preliminary hearing prior to proceeding to trial on the new information. Had counsel's objection relied on the proper grounds, the trial court could have corrected the error by setting the matter for preliminary hearing or obtaining a waiver of that hearing from defendant. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (the rule requiring a specific objection is especially appropriate where a defendant's lack of a timely and specific objection deprives the trial court of the ability to correct deficiencies in the foundational proof at trial). This court has held that a specific objection waives all other grounds. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984). Accordingly, we conclude that defendant failed to preserve his argument and that he must show that he was prejudiced by the failure to hold a preliminary hearing on the new information filed by the prosecutor. See *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976) ("When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct").

Defendant argues that he should not have to show prejudice and that requiring him to do so rewards the prosecutor for disregarding statutory mandates requiring a preliminary hearing on an information. Defendant cites this

court's decision in *People v. Benitez*, 169 Ill. 2d 245 (1996), which he believes supports his contention. In that case, an indictment was issued by the grand jury. It did not mention the defendant and it wrongly named as the victim a witness who testified before the grand jury. The indictment was signed by the grand jury foreperson and the State's Attorney. In response to a letter from the State's Attorney informing him that the grand jury had returned an indictment against him, the defendant and his attorney appeared at the scheduled arraignment. The trial court granted the State leave to file the indictment and a copy was given to defense counsel. However, this was not the same indictment returned by the grand jury. It was not signed by either the grand jury foreperson or the State's Attorney. The grand jury had not reconvened prior to the issuance of the second indictment and no motion was made to amend the original indictment. This new indictment charged defendant with first degree murder, attempted murder, aggravated battery, and armed violence. On the second day of the defendant's trial, defense counsel informed the trial court that he had just learned that the original indictment did not contain the defendant's name. The trial proceeded with the understanding that defense counsel was not waiving the issue. However, the trial court ultimately ruled that the second indictment was valid and the defendant was convicted of first degree murder and aggravated battery. Defense counsel filed a posttrial motion to vacate the defendant's convictions, arguing that they resulted from an invalid indictment. During an evidentiary hearing, it was revealed that the second indictment had been prepared by secretaries in the State's Attorney's office. The State argued that there had simply been a mistake in the paperwork that left the defendant's name off the original indictment. The trial court denied the defendant's motion, finding that the grand jury transcript showed that the grand jury had voted a true bill against the defendant for first degree murder and the other offenses. The court concluded that the second indictment properly charged and informed the defendant of the nature and elements of the charges. The appellate court affirmed. *Benitez*, 169 Ill. 2d at 250.

After concluding that the original indictment did not charge the defendant with any offense and the second indictment was invalid, this court reversed the defendant's convictions. The court determined that the prejudice standard of *Gilmore* did not apply because the defendant attacked the indictment during the trial, not following trial or for the first time on appeal. Defense counsel raised the issue immediately upon discovering that the original indictment had not contained the defendant's name. Counsel raised the issue again in his posttrial motion. The State did not argue that the defendant had waived his argument. Thus, we held that under the unique circumstances of the case, the defendant was not required to show prejudice to obtain a reversal of his convictions. *Benitez*, 169 Ill. 2d at 259.

Defendant's situation is not analogous to that in *Benitez*. While defense counsel here objected to the filing of the new information, his objection was on a different ground from the one defendant now advances on appeal. In addition, while counsel in *Benitez* filed a posttrial motion to vacate the defendant's convictions on the ground he first raised on the second day of trial, defense counsel in this case did not make any objection to the filing of the new information in defendant's posttrial motion. Because defendant did not properly preserve the objection he now raises, he must show that he was prejudiced by the failure of the trial court to order a preliminary hearing and by proceeding to trial on the information. While we do not condone the prosecutor's attempt to amend the indictment in this case, the record contains no evidence of any bad-faith effort to deprive defendant of his right to a preliminary hearing. The error was not caught by the prosecutor, defense counsel, or the trial court.

The appellate court reviewed defendant's contention for plain error. However, the proper inquiry where a defendant challenges a charging instrument for the first time on appeal is that set forth in *Gilmore*. Despite the fact that the information filed on the day of trial was an invalid attempt to amend the indictment, defendant is entitled to no relief if the information apprised him of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting

conviction as a bar to future prosecution arising out of the same conduct. *Gilmore*, 63 Ill. 2d at 29. Defendant has failed to show how he was prejudiced by the charging instrument error. In fact, although defendant did not testify at the trial and no other evidence was submitted in his defense after the State rested its case, defense counsel admitted during closing argument that defendant was on the Lakeside Terrace property at the time the exchange took place between him and the police officers. The only element added by the new information was defendant's location at the time the crime was committed. Defense counsel conceded that the information was correct on that point. Defendant does not argue otherwise on appeal. We conclude that defendant has not demonstrated any prejudice from the filing of the information or the failure to hold a preliminary hearing. Accordingly, we reject his argument that his conviction must be reversed.

### III. Intent to Deliver

Defendant next argues that the evidence was insufficient to prove beyond a reasonable doubt that he had the intent to deliver cocaine. When a court reviews the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under this standard, a reviewing court must construe all reasonable inferences from the evidence in favor of the prosecution. *People v. Bush*, 214 Ill. 2d 318, 326 (2005).

Defendant contends that because the amount of cocaine in his possession was at the low end of the statutory range, *i.e.*, 1.8 grams, he was not carrying a large amount of cash, and he did not have a weapon or other indicia of an intent to deliver, he should have been convicted only of simple possession. He claims the amount of cocaine was consistent with personal use.

Because direct evidence of intent to deliver is rare, intent must usually be proved by circumstantial evidence. Factors

˘11˘

that have been considered by reviewing courts in making a determination as to whether sufficient evidence of intent to deliver exists include (1) whether the quantity of the controlled substance is too large to be viewed as being for personal consumption, (2) the high purity of the drug, (3) possession of weapons, (4) possession of large amounts of cash, (5) possession of police scanners, beepers, or cellular phones, (6) possession of drug paraphernalia, and (7) the manner in which the controlled substance is packaged. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). The question of whether the evidence is sufficient to prove intent to deliver must be determined on a case-by-case basis. The smaller the quantity of controlled substance in a defendant's possession, the greater the need for additional circumstantial evidence of intent to deliver. *Robinson*, 167 Ill. 2d at 412-13. The list of factors set forth in *Robinson* are not exhaustive, but are merely examples of factors that courts have considered as probative of intent to deliver. *Bush*, 214 Ill. 2d at 327.

The State concedes that the amount of cocaine in defendant's possession could be consistent with personal use. However, it contends that this factor is countered by three other factors that the appellate court considered: (1) the cocaine was packaged in 12 individual baggies; (2) defendant possessed no paraphernalia that would be consistent with personal use of the cocaine; and (3) defendant possessed $75 in cash. Defendant considers the lack of personal consumption paraphernalia to be countered by the fact that he possessed no beeper, pager, or weapon. He argues that $75 is not a large amount of cash and could have come from his job, noting the pay stub he produced when the officers asked him for identification.

The appellate court rejected defendant's arguments. It noted that, in appropriate circumstances, packaging alone might be sufficient evidence of intent to deliver. At a minimum, the court said, a finding of intent to deliver requires drugs packaged for sale and any one additional factor tending to show intent to deliver. In finding that the evidence in this case supported defendant's conviction, the appellate court noted that defendant possessed 1.8 grams of cocaine that was

individually packaged in 12 baggies. Officers Smith and Smysor testified that based on the manner in which the cocaine was packaged, the quantity of the baggies, the currency on defendant's person at the time of his arrest, and the absence of drug paraphernalia for personal use, it was their opinion that defendant possessed the cocaine with the intent to deliver.

At trial, Officer Smith testified that he was familiar with items used to consume crack cocaine. Normally, a round cylinder of some type, such as a car antenna or glass tube with openings at both ends, would be used in conjunction with a filtering device at one end, such as a scrubbing pad made of copper material. Smith testified that based on the quantity and manner of packaging in individual packages and the absence of any paraphernalia for personal consumption of the cocaine, he believed that defendant possessed the cocaine with the intent to deliver it to another person. Smith noted that the cocaine had already been divided and placed in individual baggies. In that situation, there is no need for a scales or cutting agent to divide the cocaine for sale. He further testified that the amount possessed by defendant was inconsistent with an amount typically associated with personal consumption. However, on cross-examination, Smith clarified his testimony by saying that the number of individual rocks was indicative of delivery.

Officer Smysor testified that the cocaine was divided up into 12 individual rocks of cocaine that were contained in separate small plastic baggies and those baggies were inside a larger plastic bag. In Smysor's experience, the manner in which the cocaine was packaged, together with the cash that was recovered from defendant, indicated that defendant was "most likely" selling the cocaine. Smysor testified that the size of the rocks of cocaine in the baggies were the size that he typically dealt with on the street; they are usually sold for $10 each. Smysor further testified that he considered the $75 cash found in defendant's possession to be relevant because, although he did not know the source of the cash, in his experience, the sale of small individually packaged rocks of cocaine is primarily a cash business.

Although *Robinson* enumerated several factors that are relevant to the issue of intent to deliver, this court has made clear that the factors outlined in *Robinson* are not exclusive. In *Bush*, the defendant was convicted of possession of cocaine with intent to deliver. Two police officers on narcotics surveillance observed the defendant standing alone behind a wrought iron fence fronting an apartment building. On two occasions over a period of five minutes, an unknown man approached the defendant and handed her money. She walked a few feet away, reached under the fence and retrieved an unknown object from a brown paper bag, which she then gave to the man. When the officers approached the defendant, they found a clear plastic baggie inside the brown paper bag containing what appeared to be crack cocaine. When the officers searched the defendant, they found two $10 bills in her pants pocket. Defendant argued, *inter alia*, that because none of the factors outlined in *Robinson* were present in her case, her conviction should be reversed. This court rejected that argument, noting that *Robinson* described the factors it cited as *examples* of many factors that Illinois courts have considered probative of intent to deliver; no hard and fast rules could be applied in every case, given the infinite number of factual scenarios that may arise. The court found that the defendant's actions as observed by the police officers permitted an inference to be drawn that she was selling cocaine. *Bush*, 214 Ill. 2d at 327.

Here, defendant was on property owned and operated by the Housing Authority. Officers Smith and Smysor testified that they routinely patrolled Lakeside Terrace because it was known as a location where illegal drug activity took place on a continuing basis. The officers were familiar with at least five apartments where drug sales were ongoing. Defendant was carrying a plastic bag containing 12 individual baggies, each containing one rock of crack cocaine. Smysor testified that, in his experience, the size of the individual rocks defendant possessed indicated that they were possessed for the purpose of sale. They were $10 rocks, the kind Smysor dealt with on the street.

Defendant was stopped in a high-crime area known for its drug activity. Also, while defendant did not have a large amount of cash on his person, the cocaine he possessed was packaged into separate $10 rocks. While it may be inferred, as defendant argues, that the $75 came from his employment, an equally reasonable inference may be drawn that defendant had sold some of the rocks of cocaine he was carrying and at least some of the cash was attributable to those sales. We note that all reasonable inferences must be drawn in favor of the prosecution. See *Bush*, 214 Ill. 2d at 326.

While defendant was not carrying a pager, weapon, scale, cutting agent, or police scanner, he was also not carrying any paraphernalia associated with personal use of the cocaine. Further, we note that since the cocaine was already packaged for sale, there was no need for defendant to carry cutting agents or a scale. Construing the evidence and reasonable inferences therefrom in favor of the prosecution, we conclude that a rational trier of fact could have found the evidence sufficient to prove that defendant had the intent to deliver the cocaine.

## IV. Ineffective Assistance of Counsel

Defendant's last argument is that his trial counsel was ineffective for failing to file a motion to suppress evidence, where the cocaine was seized following an illegal stop by the police officers. Claims of ineffective assistance of counsel are judged under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To prevail on such a claim, the defendant must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. If a court finds that the defendant did not suffer any prejudice from counsel's acts or omissions, it need not consider whether counsel's performance was deficient. *People v. Ceja*, 204 Ill. 2d 332, 358 (2003). Generally, the decision whether to file a motion to suppress is a matter of trial strategy, which is entitled to great deference. *People v. Wilson*, 164 Ill. 2d 436, 454 (1994).

Defendant argues that the officers seized him when they met him as he was approaching the door of apartment No. 32, thereby impeding his progress toward his destination. We note that not every encounter between the police and a citizen results in a seizure. This court has recognized that police-citizen encounters can be divided into three tiers: (1) the arrest of a citizen, which must be supported by probable cause; (2) a "*Terry* stop," which must be supported by a reasonable, articulable suspicion of criminal activity (see *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); and (3) a "community caretaking function," which need not be supported by probable cause or reasonable suspicion. *People v. Smith*, 214 Ill. 2d 338, 351-52 (2005). The latter function describes those encounters between police and citizens that are consensual in nature and typically involve the safety of the public. *People v. Murray*, 137 Ill. 2d 382, 387 (1990).

A person is seized " 'when, by means of physical force or a show of authority,' " that person's " 'freedom of movement is restrained.' " *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999), quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In deciding whether a seizure has occurred, a court considers whether, in light of all the circumstances surrounding the incident, a reasonable innocent person would have believed that he or she was not free to decline police requests or to terminate the encounter. *People v. Gherna*, 203 Ill. 2d 165, 178 (2003). Accordingly, this analysis requires an objective evaluation of the police conduct in question and does not hinge upon the subjective perception of the person involved. *Gherna*, 203 Ill. 2d at 178.

Officer Smith testified that at approximately 8:30 on the evening of October 1, 2002, he and officer Smysor were on routine foot patrol at the Lakeside Terrace housing complex. They saw defendant walking on the sidewalk inside the complex juggling something in his hands. Defendant was approximately 50 to 60 feet away and the officers could not see what the object was. When defendant saw the officers, he immediately turned his back to them and placed the object in his left front pants pocket. Defendant then hesitated and

continued walking in the same direction he had been walking. Smith testified that defendant's actions caused him to become suspicious. Smith suggested to Smysor that they "go over and have a chat with the gentleman." As it appeared that defendant was headed toward one of the apartments, the officers "simply met him at the apartment" and spoke to him while standing a couple of feet from the door of apartment No. 32. Both officers were in uniform. They introduced themselves and "expressed concern" about the item that defendant had placed in his pocket. Defendant "immediately" placed his hands in his pants pockets and pulled out some United States currency in his right hand and a lighter with his left hand. Smith testified that defendant's pants fit him very loosely and that the pockets were "very deep." When the officers asked defendant if he had anything illegal on his person, defendant indicated that he did not. Smith did not believe that the lighter was the item that defendant had been juggling from hand to hand. Despite being asked several times by the officers to refrain from putting his hands in his pants pockets, defendant continued to do so. Smith asked defendant for permission to search his left pants pocket and defendant "strongly said, 'No.' " Defendant questioned the officers as to why they were talking to him. The officers told him that Lakeside Terrace was "a high crime area and that there had been plenty of drug activity going on in that area." Given the large pockets in defendant's pants and the fact that he continued to place his hands in his pockets against the officers' instructions, Smith was becoming concerned for his safety. Defendant's pockets were large enough to easily conceal a weapon. Defendant continued to place his hands in his pockets and seemed to be "very fidgety, jittery, nervous." Smith decided to back away from defendant to put him at ease. At that point, Smith asked defendant for identification. Defendant gave Smith a pay stub. Smith called the dispatcher to have defendant's name and birth date confirmed. Smith again asked defendant for permission to search his left pants pocket and defendant refused. When defendant put his hand in his pocket for about the sixth time, Smith directed Smysor to "grab" defendant for a pat-down safety frisk. Smith tried to grab defendant's left arm, but defendant moved his arm and Smith

˘17˘

missed. Defendant began to run away. Smysor tackled defendant about 10 feet from where they had all been standing. As both defendant and Smysor fell to the ground, Smith saw a white object fall onto the ground in defendant's vicinity.

Smith testified that he did not find the juggling of the item suspicious. It was defendant's action in turning his back when he saw the officers and putting the object in his pants pocket that roused Smith's suspicions. Lakeside Terrace is a high-crime area and Smith had made many drug arrests there in the past. He knew of at least five apartments in the complex where drug sales took place on an ongoing basis. At some point, Smith asked defendant what would happen if a "drug dog" was brought around him; Smith had no intention of doing so, but he asked the question to gauge defendant's reaction. Defendant responded, "Fine. Bring him over here." That is when Smith asked defendant for identification. He asked if defendant was banned from the property and if he had any outstanding warrants. While this conversation was going on, defendant had been "inching" toward the door of apartment No. 32. Smith was standing with his back to the apartment door and defendant was standing on his right, in a perpendicular angle to the door.

Officer Smysor testified that when defendant saw him and Smith, he appeared to be startled. He placed an object in the left front pocket of his pants. He initially turned away from them and took a step in the opposite direction. Then he stopped, turned around, and started walking in the general direction of the officers and toward one of the apartment units. He and Smith walked toward defendant and made contact with him in the porch area of apartment No. 32.

Defendant argues that he was illegally seized when the officers stood between him and the door to apartment No. 32. According to defendant, the officers impeded his progress and a reasonable person would not have felt free to walk away.

We must first determine the nature of the encounter between the police officers and defendant. At the time they approached defendant, the officers were on routine patrol within the confines of Lakeside Terrace, which was a high-crime area. When they first noticed defendant, he was juggling

an object from one hand to the other, an action which they did not find suspicious. Only after defendant appeared to notice the officers, turn his back, and put the object in his pants pocket did the officers become suspicious. It was after making these observations that the officers determined to approach defendant and talk to him. We note that the community caretaking function involves consensual encounters between police and citizens typically associated with the safety of the public. *Smith*, 214 Ill. 2d at 352. Such encounters are not initiated due to any suspicion of possible criminal activity. See *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (1973) (community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"). In the instant case, the officers initiated contact with defendant, not due to any public safety concerns, but because they found his actions suspicious and decided to investigate. Accordingly, we conclude that it is the role of police officers as investigators of crime that is involved here. We need not determine whether defendant was seized when the officers met him on the porch of apartment No. 32 because we conclude that prior to the initiation of contact with defendant, the officers had a reasonable articulable suspicion that defendant had committed or was about to commit a crime. In making a determination as to whether reasonable suspicion was justified in this case, we rely upon "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125, 145 L. Ed. 2d 570, 577, 120 S. Ct. 673, 676 (2000).

Officers Smith and Smysor were patrolling Lakeside Terrace, a housing project known as a high-crime area. Several drug arrests had been made there in the past and the officers knew that some of the apartments were ongoing locations for drug sales. While merely being in a high-crime area is not alone sufficient to give rise to reasonable suspicion, the characteristics of the surroundings in which the contact between police and an individual takes place are relevant to the question of whether the police had a reasonable, articulable suspicion that criminal activity may be afoot.

*Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676. As in *Wardlow*, it was not defendant's presence at Lakeside Terrace, a known location for drug sales, that aroused the officers' suspicion, nor was it defendant's juggling of the object. Rather, it was defendant's reaction to seeing the officers by immediately turning his back and placing the object in his pants pocket that led the officers to believe that defendant might be committing or be about to commit a crime. That defendant tried to conceal from the officers the object he had been juggling suggested some consciousness of guilt on defendant's part. Given what the officers knew about ongoing drug activity at Lakeside Terrace, coupled with defendant's effort to conceal the object in his pocket when he saw the uniformed officers, we conclude that reasonable, articulable suspicion existed for the officers to stop defendant and investigate.

Defendant argues that even if the initial stop was supported by reasonable suspicion, the officers exceeded their authority to detain him after he showed them the cigarette lighter he had in his left pants pocket. According to defendant, the stop should have ended there. We disagree. The officers were not required to take defendant's word as to what he had in his left pants pocket. They did not consider it likely that defendant had been juggling a lighter and sought to hide it when he saw the officers. Further, despite being asked several times not to put his hands in his pockets, defendant continued to do so. Since his pockets were large enough to conceal a weapon, the officers had a legitimate concern for their safety, thus justifying the pat-down frisk that prompted defendant to flee.

Because we conclude that a motion to suppress would not have been successful, defense counsel's failure to file such a motion did not prejudice defendant. Thus, defendant has failed to carry his burden to show that he received the ineffective assistance of counsel.

## CONCLUSION

For the reasons stated, we affirm the appellate court's judgment.

*Appellate court judgment affirmed.*

JUSTICE FITZGERALD, dissenting:

The facts of this case establish that defendant was walking near a playground on housing authority property known as a "high drug" and "high crime" area at 8:30 p.m. on October 1, 2002, when he was spotted by two police officers on routine foot patrol. The street lights were on, and the officers agreed that it was "dark enough that there were light and shadow areas." The officers, who were standing some 50 to 60 feet away from defendant, testified that he was "juggling" an object while he walked; he "had something in his hands and he was switching it back and forth between the two hands." The object was so small it was concealed in the palm of defendant's hand and the officers could not see it.

The officers observed defendant and then "stepped out of a shadowy area" to reveal their presence. They stated that defendant appeared to be "startled" by them, and upon seeing them, turned his back, placed the item in his pocket, and then turned around and proceeded to walk toward some apartment buildings. Defendant did not alter his original course to avert the officers. Nevertheless, defendant's act of turning his back, placing the unidentified object in his pocket, and resuming his walk aroused their suspicion, and they decided to intercept defendant at the apartment building and conduct a *Terry* stop. The officers approached defendant, spoke with him, and eventually advised him that they were going to conduct a pat-down search. Defendant ran, and was ultimately arrested for possession with intent to deliver.

The majority holds that defendant was not prejudiced by trial counsel's failure to file a motion to suppress on grounds of an illegal seizure because such a motion would not have been successful. I disagree. In my opinion, trial counsel's decision to forgo the suppression motion fell below an objective standard of reasonableness and resulted in prejudice to defendant. The suppression motion should have been successful in light of the facts presented. While it is true that the officers in question only

seized defendant and recovered the narcotics he possessed after he attempted to run from them, that fact is of no consequence because the police officers did not, at the outset, possess a reasonable and articulable suspicion to stop defendant under *Terry*.

This court has defined the reasonableness standard for police conduct in the context of a *Terry* stop. In *People v. Thomas*, 198 Ill. 2d 103 (2001), we stated that a *Terry* stop was properly based on reasonable suspicion when:

> "Viewed as a whole, the situation confronting the police officer *must be so far from the ordinary that any competent officer would be expected to act quickly*. The facts supporting the officer's suspicions need not meet probable cause requirements, but they *must justify more than a mere hunch*. The facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her." (Emphases added.) *Thomas*, 198 Ill. 2d at 110.

Applying this standard to the case at bar, I cannot conclude that defendant's conduct was "*so far from the ordinary that any competent officer would be expected to act quickly*." (Emphasis added.) *Thomas*, 198 Ill. 2d at 110. At the time the officers spotted defendant, he was simply a person walking towards an apartment building holding something very small and unidentifiable in his hand who stopped, turned around, placed the item in his pocket, and continued walking in the same direction. Defendant's conduct was not sufficiently suspicious to justify a *Terry* stop under any circumstances, even in a high-crime, high-drug area. An individual's protection under the fourth amendment is not dissipated simply because he or she enters an area known for criminal activity and a bustling drug trade. It seems unlikely that defendant would have been detained under *Terry* for such innocuous conduct if he were in a different location.

I recognize that reasonable suspicion sufficient to support a *Terry* stop may emerge from seemingly innocent, noncriminal conduct. See *Illinois v. Wardlow*, 528 U.S. 119, 125, 145 L. Ed. 2d 570, 577, 120 S. Ct. 673, 677 (2000). However, "[t]he facts

used to support an investigatory detention are insufficient when they describe 'a very large category of presumably innocent travelers, who would be subject to virtually random seizures.' " *People v. Anaya*, 279 Ill. App. 3d 940, 946 (1996), quoting *Reid v. Georgia*, 448 U.S. 438, 441, 65 L. Ed. 2d 890, 894, 100 S. Ct. 2752, 2754 (1980). This analysis does not change depending on the individual's location. Here, the officers acted on a hunch that defendant was up to something more than innocent activity. However, an officer's hunch, even when borne out, is insufficient to justify a stop under *Terry* (*Thomas*, 198 Ill. 2d at 110) and, in this case, resulted in a "random seizure" in violation of defendant's fourth amendment rights (*Anaya*, 279 Ill. App. 3d at 946). Accordingly, trial counsel was deficient for failing to file a motion to suppress.

JUSTICE KILBRIDE joins in this dissent.