2020 IL App (2d) 170721-U
No. 2-17-0721
Order filed April 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1094 |
| GREGORIO PENA, | ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The State proved defendant guilty beyond a reasonable doubt of possession of heroin with the intent to deliver: despite evidence that the quantity of heroin was consistent with personal use, the jury could infer the requisite intent to deliver from defendant's furtive movements in his vehicle, the cash that he possessed, the packaging of the heroin as if for sale, its discovery in an innocuous container with small packages of cocaine, and the absence of drug paraphernalia indicating personal use; however, the cause was remanded under *Krankel* for a preliminary inquiry into the basis for defendant's claim that trial counsel was ineffective for failing to introduce certain police body camera evidence and the lack of certain fingerprint testing.

¶ 2   Defendant, Gregorio Pena, appeals from the judgment of the circuit court of McHenry County, contending that he was not proved guilty beyond a reasonable doubt of possession of

heroin with the intent to deliver (720 ILCS 570/401(d) (West 2016)) and that his comments during his allocution required the trial court to conduct a preliminary inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984). We affirm the conviction and remand for a preliminary *Krankel* inquiry.

¶ 3                                                 I. BACKGROUND

¶ 4       Defendant was indicted on eight drug offenses, including (1) unlawful possession with the intent to deliver cocaine (Count III) (720 ILCS 570/401(c)(2) (West 2016)), and (2) unlawful possession with the intent to deliver heroin (Count VI) (720 ILCS 570/401(d) (West 2016)).

¶ 5       The following facts were presented at the jury trial. On November 23, 2016, at about 12:15 a.m., Officer Spencer Smith of the Harvard Police Department stopped a vehicle driven by George Herrera. Defendant was in the front passenger seat. Sergeant Andrew Spielman of the Harvard Police Department arrived with two other officers and approached the passenger side of the vehicle.

¶ 6       He saw defendant with his right hand "reaching down to his right *** between the seat" and the door. Sergeant Spielman considered that act to be either stashing something or picking something up. However, he did not see defendant drop anything. On cross-examination, Sergeant Spielman admitted that defendant held a "soda" in his hand but he could not recall which hand.

¶ 7       Pursuant to an inventory of the vehicle, Sergeant Spielman, a certified evidence technician, found a blue container on the rear floorboard, "right behind the passenger seat near the right rail" of the seat. According to Sergeant Spielman, the container was in the area where defendant had reached down. Officer Smith admitted that at one point defendant held a cellphone in one hand and a soda in the other. He also admitted that the front bucket seats made it possible for the driver to reach behind the front passenger seat.

¶ 8      The blue container held five plastic baggies containing a white and brown powder and nine plastic baggies containing a white powder.  A subsequent laboratory test of one of the five bags showed it held 0.1 grams of heroin.  A test of six of the nine bags showed that the six bags held a total of 5.7 grams of cocaine.  Because of limited resources, the laboratory did not test the contents of all of the bags.

¶ 9      Officer Smith also found $360 in defendant's wallet.  The money consisted of fifteen $20 bills, one $50 bill, and some smaller bills.  According to Officer Smith, defendant initially told him that defendant's mother gave him the money, but he later said it came from his new job.  The officers also found in the vehicle two empty plastic baggies, at least one of which was behind the driver's seat.  Officer Smith described them as having had their corners removed.  Officer Smith believed that the two empty bags were not preserved as evidence, because field tests were negative.  There was no other drug-related evidence or paraphernalia in the vehicle.

¶ 10     Officer Smith and Sergeant Spielman each wore a body camera that recorded the incident.  Portions of both videos were played for the jury.

¶ 11     Sergeant Spielman processed the blue container for fingerprints.  He collected a partial latent print, but a forensic expert testified that neither the latent print nor any other prints on the container were suitable for comparison.

¶ 12     Sergeant Michael Muraski of the McHenry County Sheriff's Office testified as an expert on narcotics trafficking.  According to Sergeant Muraski, heroin is typically packaged for sale in 0.1-gram doses in one-by-one-inch "ziplock" bags similar to those found in the blue container.  It is also packaged in 0.1- or 0.2-gram doses in capsules or foil packets.  In McHenry County, 0.1 gram of heroin sells for $20.  Three doses sell for $50, and "a jab" (10-13 doses) sells for about $200.

¶ 13    At any one time, a typical heroin user will possess a couple of doses up to a jab.  People who solely use, as opposed to sell, heroin typically possess paraphernalia such as "needles, spoons, cookers, some sort of lighting mechanism, whether that's matches or lighter, [and] some sort of filter."

¶ 14    Sergeant Muraski opined that the amount of heroin seized was not significant, but he believed that it was packaged for resale. The heroin was with cocaine, it was packaged in individual baggies, it was concealed in an innocuous container, and no drug paraphernalia was found. Further, because heroin in McHenry County is typically purchased with $20 bills, the number of $20 bills found in defendant's wallet showed that it was from drug sales.  Sergeant Muraski concluded that the amount of drugs, the packaging, the lack of any drug paraphernalia, the currency, defendant's furtive movements in the vehicle, and the concealment of the drugs in the blue container collectively showed that the cocaine and heroin was for resale as opposed to defendant's personal use.

¶ 15    Kevin Stott testified that defendant had worked for Stott's paving company from early October 2016 to mid-November 2016.  Defendant earned $10 per hour, and Stott paid him either by check or in cash.

¶ 16    The jury found defendant guilty of possession with intent to deliver both cocaine and heroin.  The trial court denied defendant's motion for a new trial.

¶ 17    In his sentencing allocution, defendant essentially argued that he was not proved guilty. To that end, he asserted that the officers lied to prove their case.  He added that, although there were fingerprints taken from the plastic bags of heroin "[it] was never brought to light at [the] trial" that the fingerprints were not sent to the lab.  He further stated that Sergeant Spielman's body camera showed that there was contraband on the floor behind the driver's seat and that defendant

"asked for the footage to be played at trial *** but [it was] never introduced." He added that the jury should have also heard that Officer Smith's body camera showed that he had seen defendant several times the day before but did not arrest him on a warrant, but instead, waited until defendant was with Herrera, a known drug offender. He reiterated that Officer Smith's body camera would have shown two empty plastic baggie corners behind the driver's seat and that he "asked for both footages to be played at trial, but it never was." Finally, he noted that he had asked to have "brought to light" that Officer Smith's body camera showed Officer Smith several times looking at his wristwatch. Defendant asserted that, because the time on the wristwatch differed from that on the body camera by an hour, that showed possible tampering.

¶ 18    The trial court responded that it understood that defendant disagreed with the verdict. The court explained that any argument regarding his innocence would have to be presented in the appellate court. The court then sentenced defendant to concurrent terms of six years' imprisonment for unlawful possession with intent to deliver cocaine and four years' imprisonment for unlawful possession with intent to deliver heroin. Defendant, in turn, filed a timely notice of appeal.

¶ 19                                      II. ANALYSIS

¶ 20    On appeal, defendant contends that (1) because the amount of heroin was consistent with personal use, the State failed to prove him guilty beyond a reasonable doubt of possession of heroin with the intent to deliver, and (2) although he alleged at sentencing that his trial attorney was ineffective, the trial court failed to conduct the inquiry required by *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 21    The State, conceding that the amount of heroin was consistent with personal use, responds that there were additional factors that proved that defendant had the intent to deliver. The State

further responds that a *Krankel* inquiry was not required, because defendant never mentioned that he asked his attorney to do anything, defendant does not explain how the body camera videos could have helped his defense, the record rebuts defendant's claim that the body camera videos were not played for the jury, the record shows that trial counsel vigorously cross-examined both officers, and Officer Smith testified that the baggies found behind the driver's seat were destroyed because field tests showed they contained no drugs.

¶ 22    We first decide whether the State proved beyond a reasonable doubt that defendant possessed the heroin with the intent to deliver.  It did.

¶ 23    In a criminal case, when a defendant challenges the sufficiency of the evidence, the dispositive question for the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *People v. Bush*, 214 Ill. 2d 318, 326 (2005).  Under that standard, a reviewing court must draw all reasonable inferences from the record in favor of the prosecution.  *Bush*, 214 Ill. 2d at 326.  To convict a defendant of possession of a controlled substance with the intent to deliver, the State must prove that the defendant (1) knew of the presence of the narcotics, (2) possessed or controlled the narcotics, and (3) intended to deliver the narcotics.  *People v. Starks*, 2019 IL App (2d) 160871, ¶ 36 (citing 720 ILCS 570/401 (West 2014)).  Defendant does not dispute the first two elements.

¶ 24    Because direct evidence of intent to deliver is rare, such intent usually must be proved by circumstantial evidence.  *Starks*, 2019 IL App (2d) 160871, ¶ 37 (citing *People v. Robinson*, 167 Ill. 2d 397, 408 (1995)).  Accordingly, the issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver.  *Starks*, 2019 IL App (2d) 160871, ¶ 37.  Our supreme court has identified the following examples of factors that

are probative of a defendant's intent to deliver: (1) whether the quantity is too large to be viewed as being for personal consumption; (2) the high purity of the substance; (3) the possession of weapons; (4) the possession of large amounts of cash; (5) the possession of police scanners, beepers, or cell phones; (6) the possession of drug paraphernalia; and (7) the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408. However, the factors set forth in *Robinson* were not meant to be exclusive, and courts may consider other evidence of drug dealing. *Bush*, 214 Ill. 2d at 327. Indeed, when other factors indicate a defendant's intent to deliver, the absence of the factors identified in *Robinson* is inconsequential. *Bush*, 214 Ill. 2d at 328.

¶ 25    Here, there were several factors that, viewed together in the light most favorable to the prosecution, supported a reasonable inference that defendant intended to deliver the heroin. First, according to Sergeant Muraski, an expert on the sale of heroin in McHenry County, the heroin was packaged for resale. It was in divided into typical 0.1 gram doses and packaged in ziplock bags commonly used to sell heroin. Second, the absence of any paraphernalia for personal drug use, such as those items identified by Sergeant Muraski, showed that defendant possessed the heroin for sale as opposed to use. See *People v. White*, 221 Ill. 2d 1, 20 (2006) (absence of paraphernalia for consuming crack cocaine was a relevant factor supporting conviction for possession with intent to deliver, notwithstanding that the amount of drugs was not inconsistent with personal use). Third, although defendant did not possess an unusually large amount of cash, according to Sergeant Muraski, the number of $20 bills was consistent with someone who had sold 0.1 gram doses of heroin. Although Stott testified that he had paid defendant in cash, he did not specify the denominations. Further, the jury was entitled to reject Stott's testimony. Fourth, consistent with drug dealing, the heroin was concealed in an innocuous container. Fifth, the heroin was found in the same container that held numerous packets of cocaine, which Sergeant Muraski testified was

another indicator of drug dealing. When we view collectively the various indicators of drug dealing, there was ample evidence to prove beyond a reasonable doubt that defendant possessed the heroin with the intent to deliver.

¶ 26    Although defendant cites several cases to support his argument, those cases are not controlling. Whether the State has established the intent to deliver is a case-by-case assessment, and the fact that the evidence in one case is not as strong as in others is not dispositive. *Starks*, 2019 IL App (2d) 160871, ¶ 41 (citing *People v. Blan*, 392 Ill. App. 3d 453, 457 (2009)).

¶ 27    Further, defendant's reliance on *People v. Nixon*, 278 Ill. App. 3d 453 (1996), is misplaced. In that case, in reducing the defendant's conviction to simple possession, the court emphasized that there was no other evidence of drug dealing beyond the defendant's mere possession of a small quantity of drugs. *Nixon*, 278 Ill. App. 3d at 458-59. Here, unlike in *Nixon*, there was ample evidence that showed defendant 's intent to deliver the small amount of heroin. Thus, *Nixon* does not support defendant.

¶ 28    We next decide whether defendant's comments during allocution required the trial court to inquire into the factual basis of a claim of ineffective assistance of counsel. They did.

¶ 29    When a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should inquire into the factual basis of the claim. *People v. Jolly*, 2014 IL 117142, ¶ 29. If a defendant's allegations of ineffective assistance of counsel show possible neglect, new counsel is appointed to represent the defendant in a full hearing on his claim. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). However, if a defendant does not sufficiently raise an ineffective-assistance claim, he does not trigger a preliminary inquiry. *People v. Taylor*, 237 Ill. 2d 68, 75-77 (2010). To trigger the preliminary inquiry, a claim must be clear. *People v. Jindra*, 2018 IL App (2d) 160225, ¶ 14 (citing *People v. Ayers*, 2017 IL 120071, ¶ 18). If a defendant clearly states a claim and the

trial court fails to conduct the preliminary inquiry into the factual basis, the case must be remanded for the limited purpose of allowing the court to do so. *People v. Remsik-Miller*, 2012 IL App (2d) 100921, ¶ 9. A trial court's alleged failure to conduct the required inquiry is reviewed *de novo*. *People v. Bates*, 2019 IL 124143, ¶ 14.

¶ 30 Here, during his allocution, defendant stated that certain evidence was not introduced at trial. Specifically, he mentioned fingerprints from the bags containing the drugs and portions of the body camera videos. Further, he stated that, although he asked that those portions of the videos be played, they were not. Although defendant never mentioned his attorney, he clearly implied that he had asked his attorney to introduce the evidence and was unhappy that he did not. That sufficiently raised a claim of ineffectiveness. See *People v.* Craig, 2020 IL App (2d) 170679, ¶ 18. Because defendant raised a claim of ineffective assistance of counsel, the trial court erred in failing to conduct a preliminary inquiry into the factual basis of the claim.

¶ 31                                    III. CONCLUSION

*¶ 32* For the reasons stated, we affirm the judgment of the circuit court of McHenry County and remand the cause for a preliminary inquiry under *Krankel*.

¶ 33 Affirmed and remanded.