**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190679-U

Order filed December 16, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE *ex rel*. JAMES WILLIAM GLASGOW, State's Attorney of Will County, Illinois | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal No. 3-19-0679 |
| | ) | Circuit No. 19-MR-2492 |
| v. | ) | |
| | ) | Honorable |
| | ) | Vincent F. Cornelius, |
| $1,850.00 United States Currency, | ) | Judge, Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

_____

PRESIDNG JUSTICE McDADE delivered the judgment of the court.
Justices O'Brien and Hauptman concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   Denial of State's forfeiture petition for lack of probable cause was not contrary to the manifest weight of the evidence.

¶ 2     The State appeals following the trial court's determination that there was no probable cause to believe that the $1,850 United States Currency in question was subject to forfeiture. The State contends that the ruling was contrary to the manifest weight of the evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        The State filed a "Notice of and Petition for Preliminary Determination Hearing" on September 3, 2019. The petition alleged that $1,850 United States Currency seized by the Joliet Police Department was subject to forfeiture under the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2018). The matter proceeded to a preliminary review hearing pursuant to section 3.5 of the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/3.5 (West 2018)).

¶ 5        The preliminary review hearing was conducted on September 11, 2019. The State averred that on August 31, 2019, Joliet police officers were responding to a call of shots fired when Ronald Hunter was observed running from the vicinity from which the shots were believed to have been fired. Hunter "jumped into" a car and, ignoring officers' commands to stop, fled the scene. After a "very short" car pursuit, Hunter abandoned the vehicle and fled on foot as officers gave chase. When Hunter scaled a fence, officers observed an object fall from his waistband and hit the ground with a "metal clanking sound." The State continued: "As officers continued to chase left what they briefly saw as a pistol on the ground but couldn't identify the tip [*sic*] of pistol."

¶ 6        Hunter was eventually apprehended with $1,850 on his person. Hunter informed the arresting officers that his cellular phone was in the car he abandoned and described the type of phone and its case. Officers returned to the car and located Hunter's phone. Directly next to the phone was a pill bottle containing 1.8 grams of a substance that tested positive for cocaine. The bottle was found in the driver's side door panel.

¶ 7        The court asked who owned the vehicle. The State responded:

        "I don't know the answer, but the cell phone that he indicated was his was found directly next to the cocaine inside the vehicle. He indicated that he had been

2

driving that car, Judge. I don't have an owner, but the defendant indicates that she[1] is the owner of the vehicle."

Immediately thereafter, the court announced that it found no probable cause. At the State's request, the court stayed return of the property for two weeks pending the State's motion for reconsideration.

¶ 8    In the subsequent motion to reconsider, the State alleged the following additional facts: Hunter was the only occupant of the car in which he fled. During the foot pursuit, officers saw Hunter "throw a gun from his person which [was] recovered." Hunter later told officers that he was unemployed. In an affidavit for the appointment of a public defender, Hunter stated that he had no assets and no income.

¶ 9    The court denied the motion to reconsider. The State subsequently requested that the court stay the return of the currency pending an appeal, or, in alternative, require the posting of bond for return of the property or order that the property not be disposed of. The court denied each request.

¶ 10                                II. ANALYSIS

¶ 11   On appeal, the State argues that the trial court's finding of no probable cause was contrary to the manifest weight of the evidence. Specifically, the State asserts that the trial court failed to apply the rebuttable presumption that "when money is found in close proximity to [controlled] substances," that money is subject to forfeiture.

¶ 12   Initially, we note that no verified claim to the currency in question was filed prior to the court's finding of no probable cause. See 725 ILCS 150/6(C)(1) (West 2018). In turn, no

---

[1]Hunter's mother was at the hearing to inquire about seized cell phones. In its brief, the State inserts Hunter's mother's name in place of the word "she." The record itself provides no such indication.

3

appellee's brief has been filed in this appeal. We are nonetheless able to decide the merits of the appeal because the record is not complicated, and the claimed error is such that we can easily resolve the issue without the aid of an opposing brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 13     Under the Illinois Controlled Substances Act, cocaine is a Schedule II controlled substance, the possession or distribution of which is prohibited by that Act. 720 ILCS 570/206(b)(4) (West 2018); *id*. §§ 401, 402. The Act provides that all money used or intended to be used in violation of or to facilitate a violation of the Act is subject to forfeiture. *Id*. § 505(4), (5).

¶ 14     Within 14 days of the seizure of property of which the State seeks forfeiture, the State must "seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture." 725 ILCS 150/3.5(a) (West 2018).

> "To satisfy the probable cause standard under the Forfeiture Act, the State must allege and prove facts that show reasonable grounds to believe that a nexus exists between the property and illegal drug activity, which may be supported by less than *prima facie* proof but must be supported by more than mere suspicion."
> *People v. 2004 Mercury Mountaineer*, 2019 IL App (3d) 180084, ¶ 12.

The Forfeiture Act further provides that "[a]ll moneys, coin, or currency found in close proximity to any substances *** possessed in violation of the Illinois Controlled Substances Act" is presumed to be furnished or intended to be furnished in exchange for a controlled substance, such that it would be subject to forfeiture. 725 ILCS 150/7(1) (West 2018).

¶ 15     A reviewing court will not disturb that determination of the trial court with respect to probable cause in the forfeiture context unless that determination is contrary to the manifest

4

weight of the evidence. *People v. Parcel of Prop. Commonly Known as 1945 N. 31st St., Decatur, Macon Cty., Illinois*, 217 Ill. 2d 481, 508 (2005). Under the manifest weight standard, this court gives deference to the trial court as finder of fact. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.*

¶ 16        The State insists throughout its brief that the currency in question was presumptively subject to forfeiture because it was "found in close proximity" to a controlled substance, and that the trial court failed to apply this presumption. While section 7(1) of the Forfeiture Act creates a presumption of forfeitability of "[a]ll moneys, coin, or currency *found* in close proximity" to a controlled substance (emphasis added) (725 ILCS 150/7(1) (West 2018)), the currency is this case was *not* found in such proximity. Rather, the $1,850 in currency was found on Hunter's person, some untold distance from the car he was briefly driving. The Forfeiture Act does not create any presumptions based on the fact that the property sought to be subjected to forfeiture was once—at some point in time in the past—in close proximity to a controlled substance. The presumption cited by the State does not apply in this case.

¶ 17        The State makes no direct argument that, absent the presumption discussed above, the evidence presented nevertheless established probable cause. It does argue that presumption was bolstered by the other evidence. The State concludes that "such a sum of money being carried by a person claiming to have no assets or gainful employment, who is also in possession of a gun and drugs, creates a strong inference that the money is related to drug activity."

¶ 18    Taking this summary of the evidence at face value[2], it still does not establish any sort of nexus between the money found on Hunter's person and illegal drug activity. First, the State conceded that it did not know who owned the vehicle in which the cocaine was found. Other than driving the car during the "very short" car chase, there was no evidence that Hunter was otherwise connected with the car.

¶ 19    Even if it is assumed that the cocaine belonged to Hunter, there were no facts presented that tended to suggest any connection between the cocaine and the money. On appeal, the State makes no suggestion as to what the relationship between such a small amount of cocaine and such a large amount of money *could* be. See *People v. Robinson*, 167 Ill. 2d 397, 413 (1995) (finding that "2.8 grams of cocaine, standing alone, could reasonably be viewed as being for personal consumption"); *People v. White*, 221 Ill. 2d 1, 17 (2006) (State concedes that 1.8 grams of cocaine is consistent with personal use); see also, *e.g.*, *People v. Irons*, 2021 IL App (3d) 190372-U, ¶ 7 (referencing a $100-per-gram value of cocaine).

¶ 20    Finally, while Hunter's possession of the money with no apparent explanation—in addition to his flight from police and possession of a firearm—certainly raises a suspicion of criminal activity, such general suspicion does not amount to reasonable grounds to believe there was a relationship between the money and a violation of the Illinois Controlled Substances Act. Accordingly, we cannot conclude that the trial court's finding of no probable cause was contrary to the manifest weight of the evidence.

¶ 21    III. CONCLUSION

---

[2]The facts related to Hunter's unemployment and assets were not introduced at the probable cause hearing but were included only later in the State's motion to reconsider. Similarly, at the original hearing, the State described police briefly seeing an object believed to be some type of pistol falling from Hunter's waistband (*supra* ¶ 5). In its motion to reconsider, these facts were transformed into the police recovering a gun that Hunter had thrown.

¶ 22  The judgment of the circuit court of Will County is affirmed.

¶ 23  Affirmed.